# STATE OF CONNECTICUT *v.* JAMES
# J. MCLAUGHLIN
# (AC 32127)

Robinson, Alvord and Espinosa, Js.

Argued February 9—officially released May 1, 2012

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, was *Stephen J. Sedensky III*, state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, James J. McLaughlin, appeals from the judgment of conviction, rendered following a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and three counts of risk of injury to a child in violation of § 53-21 (a) (2). The defendant claims that the court improperly failed to admit testimony that the victim's parents had suspicions that she had fabricated the sexual abuse claims against the defendant. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim was born in February, 1992, and was sexually abused by her uncle, the defendant, between 1999 and 2002, when the victim was between the ages of seven and ten. In April, 2006, the victim's father, while monitoring the victim's cell phone use, discovered and listened to several voice mail messages left on the victim's phone by a boy who attended school with the victim. The father was disturbed because of the profane and sexual nature of the messages. The victim's parents talked to the victim about the messages, voiced their concerns about her safety, explained that the messages seemed inappropriate and stated that it was important

that the boy respect her. When her mother asked her if she knew why the boy would leave such messages or if the victim had led the boy on, the victim became upset. She replied in the negative, and added that she did not think that she was "worthy of being talked to in the right way" or "being spoken to correctly by a man or a boy." When her parents asked her to explain her response, the victim disclosed that someone had come to her school to talk to the students about Internet safety and online predators. The victim told her parents that she did not feel safe, and that the visitor had told the students that if anything ever happened to them online, they should tell someone. The victim explained that, although nothing had happened to her online, the discussion at school led her to think about her abuse by the defendant. The victim then recounted to her parents the specific instances of abuse.

In an effort to obtain help for the victim and to gather more information, the victim's parents made an appointment with Barbara Hennessy, a child therapist. The victim's parents met with Hennessy to discuss the victim's complaints against the defendant. The victim's mother disliked Hennessy because she found Hennessy's demeanor to be somewhat harsh and because one of Hennessy's first responses upon hearing their account of the victim's claims was to ask them to consider whether the victim was being truthful, to which the victim's mother responded that her daughter would never lie about something like this. Hennessy informed the victim's parents that she was required by law to report the victim's claims to the department of children and families (department). The victim's parents were surprised about the need for immediate disclosure and assumed that Hennessy would want to meet with the victim first, and they declined Hennessy's invitation to be present when she made her call to the department. They wrote her a check for her services and left.

The day after the meeting with Hennessy, the department sent a social worker to the victim's home, who spoke with the victim's parents. The victim was interviewed formally a few days later by a member of a multidisciplinary team, with the police and the department social worker observing through a one-way mirror. The victim recounted the instances of abuse by the defendant and her reporting of the abuse to her parents.

Shortly after disclosing the sexual abuse, the victim began regular counseling sessions with psychotherapist Elizabeth Jorgensen. Jorgensen could not identify any motive on the part of the victim to fabricate the claims of sexual abuse by the defendant. It was her opinion that the victim had not gained anything from disclosing the abuse and, in fact, had lost a close relationship with her favorite aunt because of the disclosure. In May, 2007, the victim requested an emergency therapy session, during which she disclosed for the first time to Jorgensen new allegations that the defendant had abused her in an additional manner that she previously had not disclosed. The department and police conducted a second interview with the victim on the basis of that additional disclosure.

The defendant was arrested in December, 2006, and charged with three counts of risk of injury to a child in violation of § 53-21 (a) (1) and three counts of risk of injury to a child in violation of § 53-21 (a) (2). Following the May, 2007 additional disclosure of abuse, the defendant was also charged with one count of sexual assault in the first degree in violation of § 53a-70 (a) (2). Following a jury trial, the defendant was convicted of all counts. The court sentenced the defendant to a total effective term of twenty years incarceration, execution suspended after twelve years, with thirty-five years probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

The defendant claims on appeal that because the victim's credibility was crucial to the state in establishing his guilt in this case, and because the victim's mother vouched for the victim's credibility at trial, the court erred by failing to admit to the jury proffered testimony from Hennessy that the victim's parents initially had worried that the victim fabricated the claimed abuse to deflect attention from and to avoid punishment for the cell phone messages. The defendant claims that Hennessy's testimony should have been admissible either under the hearsay exception for medical diagnosis and treatment or as rebuttal evidence after the victim's mother impermissibly vouched for the victim's credibility during cross-examination. The defendant further claims that the court's failure to allow the testimony to be heard by the jury violated his constitutional right to present a defense under the sixth amendment to the United States constitution and his right to due process under the fourteenth amendment to the United States constitution.[1] The defendant states that his claims were preserved adequately at trial, but also asserts that, even if unpreserved, his claims are nevertheless entitled to review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state argues that, at trial, the defendant abandoned his effort to admit Hennessy's testimony concerning the parents' alleged doubts about the victim's truthfulness, thereby waiving any claims connected to the court's decision

---

[1] The defendant also argues in his brief that the court violated his rights under article first, § 8, of the Connecticut constitution. The defendant, however, has not provided this court with a separate and independent analysis of his state constitutional claim, and therefore we cannot review the claim. See *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004) ("We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." [Internal quotation marks omitted.]).

not to allow Hennessy to testify before the jury. We agree with the state.

Both our Supreme Court and this court have stated the principle that, when a party abandons a claim or argument before the trial court, that party waives the right to appellate review of such claim because "a contrary conclusion would result in an ambush of the trial court . . . ." *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008). "[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . In determining waiver, the conduct of the parties is of great importance. . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding." (Internal quotation marks omitted.) *State* v. *Hudson*, 122 Conn. App. 804, 813, 998 A.2d 1272, cert. denied, 298 Conn. 922, 4 A.3d 1229 (2010). A defendant who has waived a claim at trial similarly is not entitled to *Golding* review. *State* v. *Hampton*, 293 Conn. 435, 448–49, 978 A.2d 1089 (2009). "[A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." (Internal quotation marks omitted.) Id.

The following additional facts, as established by the record, are relevant to our resolution of whether the defendant has waived the claims now raised on appeal because they were abandoned at trial. During defense counsel's cross-examination of Jorgensen regarding the victim's disclosure to Jorgensen of new allegations of abuse, it came to light that Jorgensen had additional

notes from the therapy sessions concerning the new abuse allegations that had not been disclosed previously and that might contain information relevant to the defense. Cross-examination of Jorgensen was suspended, and the court ordered that Jorgensen produce any previously undisclosed notes for an in camera review so that the court could determine if the notes contained information that should be disclosed to the parties. Ultimately, after conducting an in camera review, the court determined that there were portions of Jorgensen's notes that should be disclosed, and it provided redacted copies of her notes to counsel.

Before the cross-examination of Jorgensen resumed, the defense called Hennessy to testify outside the presence of the jury for the purpose of making an offer of proof. Hennessy testified that, when the victim's parents first contacted her, they were concerned that the victim might be using the claimed abuse as a way to avoid punishment for the messages left on her cell phone. Because of the specific nature of the victim's claims, however, Hennessy testified that she did not believe that the victim was fabricating the claimed abuse. Defense counsel also elicited from Hennessy that the family had been "in crisis" for the past four years because the victim's father had had an extramarital affair and that the victim was aware of the affair. According to Hennessy, the victim's mother also revealed that her husband recently had been treated at a facility in Pennsylvania for sexual addiction and that the victim's mother had inquired whether her husband presented any safety risk to the family. She had been assured he was not a risk.

The defense believed that Hennessy's testimony and notes would support its theory that the victim lived in a household in which the victim overheard her parents arguing and fighting about marital problems and sexual

misconduct. According to defense counsel, that atmosphere provided the victim with a motive to make up stories of inappropriate touching by the defendant in order to draw her parents back together by uniting them against a common enemy—the defendant. The defense also suggested a possible alternative theory that found support in Hennessy's testimony, namely, that the victim made up the abuse to divert her parents' attention from what they had discovered on her cell phone. It was in support of both theories that the defense initially sought to present the aforementioned testimony of Hennessy to the jury along with Hennessy's notes of her session with the victim's parents, which she had referred to throughout her testimony.

The state objected to the admissibility of Hennessy's testimony, arguing that the proffered testimony was hearsay. Defense counsel argued that the testimony was admissible under the medical treatment exception to the hearsay rule. The court heard argument from both sides, but it deferred ruling at that time on whether it would allow Hennessy to testify before the jury. The court recessed for lunch.

After the lunch recess, the defense, having now reviewed Jorgenson's recently disclosed notes, resumed its cross-examination of Jorgensen. On the basis of those notes, defense counsel elicited from Jorgensen that the victim had overheard her parents fighting about and discussing her father's infidelity. Jorgensen also testified that the victim's parents had made the victim aware of her father's extramarital affair.

At the conclusion of Jorgensen's testimony, the jury was excused for the afternoon recess. The state indicated to the court that it had finished with its presentation. The state having rested, the court indicated that

defense counsel could proceed to call defense witnesses, if any. To this, defense counsel replied, "We should resolve the Hennessy issues." Before stating its offer of proof as to Hennessy, defense counsel indicated to the court: "I was able to accomplish a good deal of what I needed to do through [Jorgensen] that I intended to try to do through [Hennessy]." As to the offer of proof, defense counsel stated: "If I were to call [Hennessy], she would testify that when she met with doctor—when she met with [the victim's parents] she learned that [the victim's father] had recently returned to the home after being away, that he was away being treated for sexual obsession or whatever it was, and that the [victim's mother] had called the facility to make sure it was safe for him to come out of concern for her safety for her family. *That's all that I really want from this witness and that's why I would put her on the stand if I were to put her on.* If it's not admissible I'll send her home." (Emphasis added.) The state objected, arguing that the proffered information was inadmissible. The court agreed, stating that "with regard to the sexual addiction, the safety of the home, it's not admissible in relation to this particular witness at this juncture."

The defendant's arguments on appeal derive from his claim that the court committed reversible error by failing to admit Hennessy's testimony that the victim's parents initially were suspicious that the victim was making up the claimed abuse to avoid punishment for the cell phone messages. Our review of the record, however, and in particular that portion of the transcript containing defense counsel's offer of proof to the court concerning Hennessy's testimony, reveals that the defendant abandoned any earlier effort to have the jury hear from Hennessy except as to her testimony that the victim's father had been treated for sexual addiction and that the victim's mother had inquired of his treatment center whether he posed a threat to the family.

The court ruled that that particular information was not admissible, and the defendant is not challenging that ruling on appeal. Because Hennessy's testimony that the victim's parents initially had doubts concerning the credibility of the victim's claims was not a part of the defendant's offer of proof, the court never ruled on the admissibility of that testimony. The defendant's claim depends on an adverse evidentiary ruling that was never made. "We cannot pass on the correctness of a trial court ruling that was never made." *Fischel* v. *TKPK, Ltd.*, 34 Conn. App. 22, 26, 640 A.2d 125 (1994). By abandoning his effort to admit Hennessy's testimony concerning the parents' alleged doubts about the victim's truthfulness, the defendant effectively waived any appellate issues connected to the court's decision not to allow Hennessy to testify.

The judgment is affirmed.

In this opinion the other judges concurred.