******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TAJAH MCCLAIN
(AC 36791)

Alvord, Mullins and West, Js.

*Argued September 24—officially released December 23, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Kahn, J.)

*Daniel J. Krisch*, assigned counsel, for the appellant (defendant).

*Katherine E. Donoghue*, special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *C. Robert Satti, Jr.*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Tajah McClain, appeals from the judgment of conviction, rendered following a jury trial, of murder with a firearm in violation of General Statutes §§ 53a-54a (a) and 53-202k, assault in the first degree with a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53-202k, and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that the trial court (1) improperly limited his cross-examination of an eyewitness, and (2) committed plain error by not instructing the jury on the doctrine of consciousness of guilt. We affirm the judgment of the court.

The jury reasonably could have found the following facts. On July 17, 2010, a group of more than ten people were drinking alcohol in the area known as "the X," located behind the Greene Homes Housing Complex in Bridgeport. Shortly before 5:22 a.m., the victim, Eldwin Barrios,[1] was sitting on a crate when all of a sudden the defendant and at least two other men jumped on him, and started punching and kicking him. The victim kept asking them why they were hitting him, but no one answered. The defendant then was passed a chrome or silver handgun and he fired one shot, intended for the victim. The bullet, however, struck one of the other men in the back of the leg. The man who had just been shot yelled, "you shot me, you shot me, why you shot me," to which the defendant replied, "my bad." As this was happening, the victim got up and tried to run away, but the defendant fired several shots at him. Three of the defendant's shots hit the victim—one in the leg, one in the arm, and one in the torso—at which point, the victim fell to the ground and died.

The defendant was arrested three days after the murder. Following a jury trial, the defendant was convicted and sentenced to a total effective sentence of sixty-five years incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's initial claim is that the court violated his right pursuant to the sixth amendment to the United States constitution to confront witnesses against him by improperly limiting his cross-examination of an eyewitness, Eduardo Martorony. The defendant argues that the court improperly precluded him from cross-examining Martorony about the benefits derived from the witness protection program. Specifically, where he was living while in the program—a hotel, motel, or apartment, and how the state paid for his food, housing, and expenses—cash, check, or otherwise. He argues that this limitation prevented the jury from accurately assessing Martorony's credibility. We disagree.

The following additional facts, which the jury reasonably could have found, are relevant to this claim. Martor-

ony had lived in the Greene Homes Housing Complex since 1992 and was still living there in July, 2010. He was seated about fifteen to twenty feet away from the victim at the time the fight started, and testified at trial, on behalf of the state, as to what he witnessed. In an attempt to undermine Martorony's credibility, the defendant cross-examined him extensively about the criminal charges he had pending against him at the time of trial, whether he hoped those charges would be dropped in exchange for his testimony, whether he desired not to go to jail, and how much alcohol he had to drink on the night of the shooting.

The defendant also asked Martorony several questions about his participation in the witness protection program. Prior to being in the program, Martorony had been unemployed for nine years and was living off a monthly social security check. While in the witness protection program, however, the state was paying for his food, housing, and other expenses amounting to at least seven hundred and fifty dollars. The court limited the defendant's cross-examination to only some of the details of the witness protection program. Specifically, the court did not allow the defendant to question Martorony regarding the form of the payments provided by the state and where he was living while in the program.

After the jury exited the courtroom, the court stated for the record the substance of a prior sidebar conversation, and noted: "I permitted [defense counsel] to cross-examine [Martorony] on whether his lodging is paid for [by the state], whether his expenses are paid for [by the state] and the amount of that. What I am not going to permit and would not permit [defense counsel] to do is to ask any witness in the witness protection program what type of lodging they're being provided specifically and how they're being supported; whether it's cash payments, et cetera. So all the questions that I did not permit and sustained the state's objections [to] were questions that would lead to disclosures that, in this court's view, would compromise the integrity of the witness protection program and the security of the individuals. . . . [Defense counsel is] still permitted to cross-examine [witnesses] on the amount and how much the state is spending and what . . . is being paid for, just not the how, where and when necessarily." The court stated that allowing the defendant to ask whether Martorony was in a hotel or apartment could endanger the witness: "[Disclosing that information] will limit the areas in which somebody could search for a potential individual. So in the court's view, that would certainly provide some information as to where to locate the person, and it could potentially also have a chilling effect on the witness. [I]n the court's view, the defense's ability to inquire into . . . what is being paid for and what benefits are received . . . is sufficient to elicit the type of testimony that the defense would need to cross-examine relating to the witness'

. . . motive, bias, [and] ability to lie . . . whether it's a house, apartment or hotel room, in this court's view, is not so significant that it would diminish the impact of the cross-examination. And the risk of potentially disclosing where somebody's location is, in this court's view, is far too great, and the probative value of that level of detail, in this court's view, does not outweigh the general interest of the state authorities in insuring the integrity of the program."

We begin our review of the defendant's first claim by setting forth the governing legal principles. "The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . We must, therefore, conduct a two-step analysis, determining first whether the cross-examination permitted to defense counsel comported with sixth amendment standards . . . and second, whether the trial court abused its discretion in restricting the scope of that cross-examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Reeves*, 57 Conn. App. 337, 346, 748 A.2d 357 (2000).

"The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . [T]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992).

"[T]he confrontation clause does not [however] suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . To the contrary, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

(Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 9–10, 1 A.3d 76 (2010). "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Citations omitted; internal quotation marks omitted.) Id., 11.

With these standards in mind, we conclude that the defendant's cross-examination of Martorony satisfied constitutional requirements and, further, that the court did not abuse its discretion in limiting the questioning as it did. A review of the record discloses that the defendant was given ample opportunity to cross-examine Martorony regarding his bias and motives for testifying. The defendant elicited a considerable amount of information to aid the jury in assessing Martorony's credibility, including testimony about the fact that he hoped that the pending charges against him would be dropped in exchange for his testimony. We, therefore, conclude that the jury was given sufficient facts from which it could determine the reliability of Martorony's testimony, and, as a result, the cross-examination met the constitutional standard. See *State* v. *Santiago*, supra, 224 Conn. 331. The court also allowed the defendant to ask a number of questions about Martorony's participation in the witness protection program, including what the state paid for, how long he was receiving benefits from the state, and how much money he had received from the state. The court only limited the defendant's questioning about two specific aspects of the witness protection program—the type of lodging and the form of payment. Neither aspect was essential to a determination of Martorony's credibility in light of the other evidence elicited. On the basis of our review of the record and briefs, we cannot say that the court abused its discretion in ruling as it did. The court properly exercised its discretion in balancing the probative value of the evidence against the state's interest in insuring the integrity of the witness protection program and the security of its participants.

## II

The defendant's second claim is that the court "worked a serious and manifest injustice" by not instructing the jury on consciousness of guilt. (Internal quotation marks omitted.) The defendant concedes that he did not preserve this issue at trial by requesting such an instruction, but, nevertheless, he now seeks review under the plain error doctrine.[2] We conclude that the defendant asserted a valid waiver before the court that precludes the application of the plain error doctrine on appeal.

The following additional facts are relevant. On the first day of trial, the court provided counsel with a copy of the proposed jury instructions, indicated it received requests to charge from both parties, and stated it would review each accordingly. On the sixth day of trial, the court and counsel discussed the upcoming charge conference and issues relating to the jury instructions. The state reminded the court that it had requested a consciousness of guilt instruction.[3] The court asked the state to identify the evidence that supported giving that proposed instruction, and the state explained that it intended to contradict the testimony of the defendant's alibi witness, his sister, who claimed the defendant was living with her on Ogden Street in Bridgeport for the six months prior to, and on the night of, the murder. To do so, the state proffered that it planned to introduce, through one of its witnesses, the defendant's uniform arrest report, which was created three days after the murder and indicated that the defendant had told the police that he was homeless at the time. The state also proffered to call another witness, who later testified that, three months before the murder, the defendant said he was living on Wood Avenue in Bridgeport. Defense counsel did not object to the state's arguments, and responded, "No, Your Honor," when the court asked if there was anything further from either side relating to the instructions.

On the next day of trial, the court stated that it would not give the state's requested instruction, provided counsel with a copy of the proposed instructions, and asked if counsel were ready to proceed. Defense counsel did not take exception to the court's decision not to charge on consciousness of guilt.

During its rebuttal case, the state introduced the uniform arrest report into evidence and elicited testimony related thereto. Defense counsel did not object. The state also elicited testimony that, three months before the murder, the defendant stated he was living on Wood Avenue. Defense counsel did not object. After the state rested its rebuttal case, the court held a charge conference on the record. There was no further discussion about the consciousness of guilt instruction, and, when the court asked if there was "[a]nything further on the instructions," defense counsel responded, "No, Your Honor."

The parties proceeded to give closing arguments, during which defense counsel argued that a discrepancy between a witness' description of the shooter and the defendant's height and weight, as reflected in the uniform arrest report, in conjunction with his alibi, proved that he was not the shooter. The state addressed the defendant's alibi claim in its rebuttal argument. Specifically, the state argued: "The defendant is arrested for a crime, and you'll see the [uniform arrest report] that you have, what he was arrested for; it was a murder.

And at the time that he's arrested, he tells the police that he was homeless. Now, why would he tell the police he was homeless; you have a right to consider that. Can you use that as circumstantial evidence of a consciousness of guilt. Think about it. If I tell them I'm living [on] Ogden Street, they're gonna be able to go over and find out the truth in this case. If you're thinking about this yourself; just yourself thinking about things." Defense counsel did not object to this argument. Following closing arguments, the court instructed the jury, and the charge did not include an instruction on consciousness of guilt. The court then asked counsel if either side had any issues with the charge, and both stated they did not. The defendant now claims that it was plain error for the court to have omitted an instruction on consciousness of guilt. We conclude that the defendant waived this claim.

"Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party *waives* any such claim. . . . The reason that [an] objection must be raised at trial is to afford the court an opportunity to correct an allegedly improper ruling or procedure. . . . We do not look with favor on parties requesting, or agreeing to, an instruction or a procedure to be followed, and later claiming that that act was improper. . . . [A] defendant may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Rosado*, 147 Conn. App. 688, 701–702, 83 A.3d 351, cert. denied, 311 Conn. 928, 86 A.3d 1058 (2014); see also *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 71, 967 A.2d 41 (2009) ("[w]hen a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal" [internal quotation marks omitted]). "[A] valid waiver . . . thwarts plain error review of a claim. [The] Plain Error Rule may only be invoked in instances of forfeited-but-reversible error . . . and cannot be used for the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct." (Internal quotation marks omitted.) *State* v. *Rosado*, supra, 702.

Our recent decision in *Rosado* guides our resolution of this issue.[4] In *Rosado*, we declined to find plain error on the basis of the defendant's claim that the trial court erred by proceeding to take the jury's verdict before responding to the jury's note requesting a clarifying instruction because defense counsel raised no objection and affirmatively agreed with the court's proposal to proceed to the verdict. Id., 702–703, 704. We noted that: "Both our Supreme Court and this court have stated the principle that, when a party abandons a claim or

argument before the trial court, that party waives the right to appellate review of such claim because a contrary conclusion would result in an ambush of the trial court . . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal.'' (Internal quotation marks omitted.) Id., 701. We then held: ''Defense counsel . . . raised no objection [in the trial court] and, in fact, affirmatively agreed to the court's proposal. Permitting the defendant now to seek reversal of his conviction due to the procedure followed by the court, to which defense counsel expressly assented at trial, would result in an ambuscade of the trial court.'' Id., 703.

On the basis of our examination of the record, we conclude that the representations of defense counsel reflected acquiescence in the proposed jury instructions. Defense counsel raised no objection to the state's request for a consciousness of guilt instruction or to the court's denial of that request. Defense counsel affirmatively represented that he did not have any concerns about the charge, and, in fact, used the evidence introduced by the state to support his argument that the defendant was not the shooter. The defendant, therefore, waived any appellate issues connected to the court's decision not to provide the instruction. Accordingly, we conclude that the defendant's waiver precludes the application of the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant's conviction of assault in the first degree with a firearm was based on a different victim, for clarity we refer to Eldwin Barrios as ''the victim.''

[2] Although the defendant concedes that this claim is not reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), pursuant to *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), he nonetheless argues that a *Kitchens'* waiver does not preclude the application of the plain error doctrine. We acknowledge the tension in our appellate law as to whether reversal for plain error is available for claims regarding jury instructions that are waived pursuant to *Kitchens*. See *State* v. *Sanchez*, 308 Conn. 64, 74–75 n.5, 60 A.3d 271 (2013); see also *State* v. *Davis*, 311 Conn. 468, 503 n.14, 88 A.3d 445 (2014) (*Palmer, J.*, concurring). Because there is no indication that a claim of this nature is precluded as a matter of law; see *State* v. *Webster*, 308 Conn. 43, 64, 60 A.3d 259 (2013) (*Rogers, C. J.*, concurring); we address the defendant's arguments.

[3] The requested instruction read as follows: ''When a person is on trial for a criminal offense, it is proper to show his conduct, as well as any declarations made by him, subsequent to the alleged criminal offense, which may fairly have been influenced by that act. The state here claims that some of the statements made by the defendant to the police were false.

''If you find that the defendant did make material false statements to the police in connection with the alleged crime, you may find that such false statements tend to show a consciousness of guilt. In other words, from any material statements made by the defendant subsequent to the criminal act alleged, which are shown to be false, you may fairly infer consciousness of guilt if you find such inference is reasonable.

''Such statements when shown to be false may be circumstantial evidence of guilt. If you find that the defendant's acts or words show consciousness of guilt, you may use that inference along with the other facts of the case to determine whether he has been proven guilty of the crimes charged beyond a reasonable doubt.''

[4] This appeal was originally filed in our Supreme Court. When the appeal

was transferred to this court, the defendant filed a motion requesting that the court hear the appeal en banc because the court would need to overrule *Rosado* to consider his request that we reverse the judgment for plain error. The court denied the motion.

———————————————