******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHRISTOPHER
TIERINNI
(AC 36903)

DiPentima, C. J., and Lavine and Schaller, Js.

*Argued March 2—officially released May 31, 2016*

(Appeal from Superior Court, judicial district of

Tolland, geographical area number nineteen, Graham, J.)

*Stephanie L. Evans*, assigned counsel, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Elizabeth C. Leaming*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Christopher Tieri-nni, appeals from the judgment of conviction, rendered after a jury trial, of four counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) he was denied his federal and state constitutional rights to due process and a fair trial when he was excluded from critical stages of the proceedings and (2) the court improperly instructed the jury. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. The victim[1] met the defendant in the spring of 2011. At that time, the defendant was twenty-eight years old and the victim was fifteen years old. Near the end of May, 2011, the defendant kissed the victim. The defendant told the victim that he loved her and eventually they engaged in sexual activity at his apartment on several occasions. The victim started missing school and stayed at the defendant's apartment for extended periods.

On June 17, 2011, the victim called the defendant and asked him to pick her up at a fast food restaurant near her home. The defendant arrived at the restaurant in his green minivan, which the victim entered. Police officers, who had been investigating the nature of the relationship between the defendant and the victim, effectuated a traffic stop and found the victim crouched in the back seat. Although the victim initially denied having a physical relationship with the defendant, she eventually disclosed the sexual activity to law enforcement personnel.

In an amended substitute information, the state charged the defendant with five counts of sexual assault in the second degree in violation of § 53a-71 (a) (1) and four counts of risk of injury to a child in violation of § 53-21 (a) (2). Following a trial, the jury returned a not guilty verdict with respect to counts one and two of the information alleging, respectively, sexual assault in the second degree and risk of injury to a minor for the time period of May 20, 2011 through May 31, 2011. The jury returned guilty verdicts for the remaining charges for conduct that occurred on June 6, 2011, June 7, 2011, and June 15, 2011. The court accepted the verdict, rendered judgment thereon, and sentenced the defendant to an effective term of eighteen years of incarceration and forty-two years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that he was denied his federal and state constitutional rights to due process and a fair trial when he was excluded from a critical stage of the proceedings. Specifically, he argues that

his constitutional rights were violated by the court's practice of hearing arguments on evidentiary objections at sidebar. He also contends that as a result of this practice, the court failed to ensure that an adequate record was created for appellate review. The defendant concedes that this claim is unpreserved and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or, in the alternative, that we reverse his conviction pursuant to the plain error doctrine.[2] The state counters that (1) the record is inadequate to review the defendant's claim, (2) the defendant waived this claim by expressly agreeing to the court's practice, (3) the defendant's brief is inadequate and (4) the claim fails on the merits. We agree with the state that the defendant waived this claim.

The following additional facts aid our discussion. Prior to the start of evidence, the court engaged in the following colloquy with the prosecutor and defense counsel. "If there are no other matters that need to be clarified for counsel or rulings, I do want to mention to counsel it's my practice, in fact, I think you heard one of the prospective jurors, he was not accepted, complain about sitting here in a trial back in 2003, a civil case with an unnamed judge and unnamed lawyers, where he felt that they were constantly being sent out, there were constant problems. I've never had the comment about one of my trials yet.

"What we're going to do, what my practice is, *unless there is objection to* [*it*], is if you have a simple objection and you don't need any detailed argument, you know, then you state it: Objection, hearsay.

"Let's say, for example, [defense counsel] objects to something and says, 'Objection, hearsay'; if [the prosecutor] is claiming the medical record exception, she'll simply say, 'Medical record exception,' and then I could rule and we'll move on.

"If, however, one of you feels the need to further explain your position, of if, for example, it's a relevancy or a prejudice versus probative objection and you think that, perhaps correctly, that I don't know the context of this evidence yet, then you should ask for a sidebar.

"[The prosecutor is] familiar with this. We did this the last trial she had here, but basically what I do, [defense counsel] is if you need to speak to me further, other than a very simple, very brief objection, such as objection, hearsay, then ask for a sidebar. We'll have a sidebar over there. We'll keep our voices low. The jury won't hear it. You'll make your pitch. You'll make your two points or whatever. [The prosecutor] will do the same. We'll go back on the record. I'll rule. The jury will not hear the substance of what you're saying so that there's no risk they'll be prejudiced by it.

"At the next break, the next time the jury is out of the room, for example, the morning recess is half an

hour later, the jury leaves for the morning recess, you then will have the opportunity, and I encourage you to put on the record the substance of any discussion we had if you wish it.

"Now, sometimes in retrospect it turns out it wasn't important because of the answer or something of that nature, but basically that enables us to have discussions about evidentiary issues briefly without making the jury go in and out, in and out, and at a later time, the next break when the jury's out, to place the substance of your argument on the record, and all I ask in that regard is that if you give me two points at sidebar, then half an hour later, after we've moved on and I've overruled the objection, that I don't hear for the first time a third point being raised because it's too late for me to deal with it and I won't be happy. And I must say, in all the years I've done this, only one lawyer's done that and he won't ever do that again, I'm sure.

"*If there's [an] objection, we won't follow that procedure*, but I find it helps the trial move along and it keeps the [jurors] from feeling that they're getting kicked out, kicked out, kicked out all the time. I think it might also reduce annoyance with the attorneys or the judge, although I'm not concerned with that, from the jurors constantly having to leave.

"And again, let me be very clear, *if there's something you feel needs to immediately be put on the record, tell me as soon as we get to sidebar and I'll kick the jury out. I'm not trying to prevent anybody from making a record. You'll always have the chance to make a record at the next break. If you feel you need to make an immediate record, just tell me that too and I'll immediately excuse the jury.* In no way am I trying to prevent a record from being made. I'm simply trying to keep the case moving along and reduce any annoyance on the part of the jury. Is there any objection to that procedure?" (Emphasis added.) Both counsel expressly responded, "No, Your Honor."

During the first day of evidence, the state called the victim as a witness. At one point, she made reference to the defendant's jail cell number. Defense counsel objected and requested a sidebar. The court conducted a sidebar discussion and ordered that the comments regarding the defendant being in jail or his jail cell be stricken. A few moments later, defense counsel raised an objection when the state attempted to have state's exhibit A admitted into evidence. Specifically, defense counsel requested that the jury be excused but the court instead held a sidebar discussion, and at the conclusion admitted state's exhibit A into evidence. A few moments later, defense counsel raised an objection to the state's next exhibit and requested a sidebar conference. After that conference, defense counsel stated, on the record, that the basis for her objection was that state's exhibit B was more prejudicial than probative. The court over-

ruled the objection, and stated that defense counsel would have the opportunity to elaborate in a few minutes.

After the jury was excused for lunch, the court and counsel addressed the admission of state's exhibits A and B into evidence on the record. The court and the parties continued to use this practice during the trial and at times the jury was excused at the time an objection was made.[3] At no point during the proceedings did the defendant raise any objection to this procedure.

As we previously noted, the defendant seeks review of his unpreserved claim under the doctrine set forth in *State* v. *Golding*, supra, 233 Conn. 239–40. "Under *Golding* review, as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *D'Amato*, 163 Conn. App. 536, 543 n.9,     A.3d     (2016); see also *State* v. *Yeaw*, 162 Conn. App. 382, 388–89, 131 A.3d 1172 (2016).

"In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . . To reach a contrary conclusion would result in an ambush of the trial court by permitting the defendant to raise a claim on appeal that his or her counsel expressly had abandoned in the trial court. . . .

"[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . In determining waiver, the conduct of the parties is of great importance. . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Cancel*, 149 Conn. App. 86, 99–100, 87 A.3d 618, cert. denied, 311 Conn. 954, 97 A.3d 985 (2014).

Put another way, "[w]e do not look with favor on parties requesting, or agreeing to, an instruction or a procedure to be followed, and later claiming that that act was improper." (Internal quotation marks omitted.) *State* v. *Rosado*, 147 Conn. App. 688, 702, 83 A.3d 351, cert. denied, 311 Conn. 928, 86 A.3d 1058 (2014); see also *State* v. *Thompson*, 146 Conn. App. 249, 259, 76 A.3d 273 (when party consents to or expresses satisfaction with issue at trial, claims arising from that issue deemed waived and not reviewable on appeal), cert. denied, 310 Conn. 956, 81 A.3d 1182 (2013); *State* v. *Crawley*, 138 Conn. App. 124, 134, 50 A.3d 349 (appellate court cannot permit defendant to elect one course at trial and then to insist on appeal that course which he rejected at trial be reopened), cert. denied, 307 Conn. 925, 55 A.3d 565 (2012).

The defendant had a right to be present during his trial. "It has long been settled that an accused enjoys a right both at common law and pursuant to the sixth amendment's confrontation clause to be present at all stages of trial. . . . It is also well settled that under the due process clauses of the fifth and fourteenth amendments a defendant must be allowed to be present at his trial to the extent that a fair and just hearing would be thwarted by his absence." (Internal quotation marks omitted.) *State* v. *Vines*, 71 Conn. App. 751, 767, 804 A.2d 877 (2002), aff'd, 268 Conn. 239, 842 A.2d 1086 (2004); see also *State* v. *Gonzalez*, 205 Conn. 673, 688, 535 A.2d 345 (1987) (criminal defendant has federal and state constitutional rights, under confrontation and due process clauses, to be present at all critical stages of trial). The right to be present, however, may be waived. *State* v. *Crawley*, supra, 138 Conn. App. 131; see also *State* v. *Drakeford*, 202 Conn. 75, 79, 519 A.2d 1194 (1987) (right to be present at criminal trial may be lost by consent, waiver or misconduct).

In the present case, prior to the start of evidence, the court set forth its procedure for hearing evidentiary objections during the trial. It further explained that it preferred to use this approach "to keep the case moving and reduce any annoyance on the part of the jury." The court also stated that it would only use this procedure if neither side objected. Several opportunities were afforded for counsel to make a record, including the court's willingness to excuse the jury immediately if such a request was made. Defense counsel stated that she had no objection to the procedure outlined by the court.

By agreeing to the court's procedure, the defendant effectively waived the claims raised in his appellate brief regarding the court's use of sidebars. "*In determining waiver, the conduct of the parties is of great importance. . . . [W]aiver may be effected by action of counsel. . . .* When a party consents to or expresses satisfaction with an issue at trial, claims aris-

ing from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding."[4] (Emphasis added; internal quotation marks omitted.) *State* v. *McLaughlin*, 135 Conn. App. 193, 198, 41 A.3d 694, cert. denied, 307 Conn. 904, 53 A.3d 219 (2012).

The defendant accepted and acquiesced to the court's procedure and thus waived the claim that he was denied his right to be present at the sidebar discussions. As this court recently observed, "[s]imply put, a constitutional claim that has been waived does not satisfy the third prong of *Golding*." *Delahunty* v. *Targonski*, 158 Conn. App. 741, 748, 121 A.3d 727 (2015); see also *State* v. *Reddick*, 153 Conn. App. 69, 82, 100 A.3d 439, cert. denied, 315 Conn. 904, 104 A.3d 757 (2014); *State* v. *Arluk*, 75 Conn. App. 181, 193, 815 A.2d 694 (2003). The defendant's constitutional claims, therefore, must fail.[5]

## II

The defendant next claims that the court improperly instructed the jury. Specifically, he argues that the court's instructions on constancy of accusation testimony[6] confused the jury and failed to include an instruction that the jury could use the constancy testimony to impeach the victim. We conclude that the defendant failed to preserve this claim.

The following additional facts are necessary for our discussion. The state's second witness was Jennifer Pinard, a therapist employed by the Wheeler Clinic. Pinard testified that she worked "with families for three to five months with a variety of children . . . [who had] truancy issues, running away behaviors, sometimes substance use, difficulties in the home, difficulties at school with academic performance." She worked with the victim following a referral from the Department of Children and Families. On June 15, 2011, Pinard went to the victim's home, and learned that the victim's grandmother had concerns about her association with an older man, who later was determined to be the defendant.

Pinard testified that, approximately six weeks later, on July 27, 2011, the victim disclosed that she had engaged in oral sex with the defendant. Outside of the presence of the jury, after discussing certain evidentiary matters with counsel, the court indicated that it would provide the jury with a limiting instruction for the use of this testimony. Specifically, the court indicated that "[i]t's the instruction that this witness' testimony as to [the victim] telling [Pinard] about having fellatio with the defendant, the disclosure that [the victim] made on July 27, is—that it's admitted solely for the purposes of corroboration of [the victim's] testimony that there was such an incident and not for—only to corroborate her testimony."

At the conclusion of Pinard's testimony, the court

provided the jury with the following instruction. "Ladies and gentlemen, there was a portion—you will recall there was a portion of Mrs. Pinard's testimony where she relayed—related to you that [the victim] had had a previous—had previously had fellatio with the defendant. That portion of her testimony may be used for the sole purpose of corroborating [the victim's] accusation that she had fellatio with the defendant in that timeframe, if you find it does, in fact, corroborate it. And that portion of Ms. Pinard's testimony may be used for that purpose only. That direction applies only for that portion of the testimony where she related to you what [the victim] told her on July 27, with regard to claiming to have had fellatio with the defendant." The court then recessed for the day.

The next morning, the court stated on the record that following a discussion in chambers with counsel, it would provide a corrected limiting instruction to the jury regarding Pinard's testimony as to what the victim had told her on July 27, 2011. After the jury entered the courtroom, the court stated: "Let me correct something I said at the very end of the day yesterday after Ms. Pinard testified. You'll recall that she testified that on July 27, [the victim] told Ms. Pinard about previously performing fellatio on the defendant, and I wish to correct my caution to you yesterday about the proper use of that portion of Ms. Pinard's testimony. That portion may be used only to assist you in assessing [the victim's] credibility and not as substantive proof of any alleged sexual assault."

The defendant filed a request to charge, asking the court to give the jury the following instruction with respect to constancy of accusation evidence.[7] "Witnesses have testified that [the victim] told them that she was the victim of a sexual assault, and these accounts of what happened are allowed as corroboration because it is natural for a victim of sexual assault to tell someone. The details of these accounts are likely to be the same if [the victim's] claims are true, but discrepancies are more likely if the incident did not happen." The court declined to give the charge as requested by the defendant.[8]

During its charge, the court instructed the jury on the use of evidence admitted for a limited purpose and constancy of accusation testimony.[9] At the conclusion of the court's charge, the defendant renewed his objection to the court's constancy of accusation instruction. Specifically, the defendant objected solely on the basis of the court's decision not to incorporate his request to charge the jury on the use of the constancy testimony.

As an initial matter, we set forth the general legal principles relating to claims of an improper jury instruction. "Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could

have been misled by the omission of the requested instruction. . . . [Although] a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Collin*, 154 Conn. App. 102, 128, 105 A.3d 309 (2014), cert. denied, 315 Conn. 924, 109 A.3d 480 (2015).

On appeal, the defendant argues that the court's two instructions limiting the use of the constancy of accusation testimony from Pinard, one given at the end of her testimony and one given the next day, and the court's charge on the use of constancy testimony were confusing. He further contends that as a result of this confusion, the court was obligated to instruct the jury that it "could consider the inconsistencies in the [victim's] testimony to discredit her testimony in court." The defendant also claims that the court improperly limited the use of the constancy testimony to the charge of sexual assault as set forth in count four of the information. The defendant claims that by filing his request to charge on the constancy of accusation evidence, he properly preserved his argument for appellate review, or, in the alternative, requests *Golding* review.

Before reaching the merits of the defendant's argument relating to his claim of instructional error, we first must consider the state's assertion that these specific arguments were not preserved at trial and fail to meet the second prong of *Golding*, and therefore we should not review the merits of this argument. We agree with the state and conclude that the defendant's claim is not reviewable because it was not preserved at trial and is not of constitutional magnitude.

As we recently stated, "[t]he proper time for the defendant to preserve a claim of error with respect to the court's instructions, however, is when the court proposes to give the challenged instruction or after it gives it to the jury." *State* v. *Daley*, 161 Conn. App. 861, 871, 129 A.3d 190 (2015), cert. denied, 320 Conn. 919, 132 A.3d 1093 (2016); see also Practice Book § 42-16. Neither the request to charge filed by the defendant nor his objection raised following the court's charge to the jury contained a claim that the court's instruction was confusing in light of the limiting instructions following Pinard's testimony or that it was limited improperly to a single count in the information. The request to charge and subsequent objection were limited to seeking an instruction that discrepancies between the vic-

tim's testimony and Pinard's testimony regarding the assault are more likely if the incident did not occur. The arguments raised by the defendant on appeal were not presented to the trial court in accordance with our case law and rules of practice. Accordingly, we conclude that the defendant failed to preserve this claim for appellate review. See, e.g., *State* v. *Smith*, 156 Conn. App. 537, 573, 113 A.3d 103, cert. denied, 317 Conn. 910, 115 A.3d 1106 (2015).

We also conclude that the defendant's claim is not reviewable pursuant to *State* v. *Golding*, supra, 233 Conn. 239–40. See *State* v. *Cornelius*, 120 Conn. App. 177, 181, 990 A.2d 927 (first two prongs of *Golding* involve determination of whether claim is reviewable), cert. denied, 296 Conn. 910, 993 A.2d 467 (2010). It is well established that "[n]ot every claim of instructional error is constitutional in nature. . . . Our Supreme Court repeatedly has noted that it has recognized instructional claims as raising constitutional issues only in matters relating to the elements of an offense, burden of proof and the presumption of innocence." (Citation omitted; internal quotation marks omitted.) *State* v. *Inglis*, 151 Conn. App. 283, 289, 94 A.3d 1204, cert. denied, 314 Conn. 920, 100 A.3d 851 (2014), cert. denied,     U.S.    , 135 S. Ct. 1559, 191 L. Ed. 2d 647 (2015); see also *State* v. *Rivera*, 145 Conn. App. 344, 352, 76 A.3d 197, cert. denied, 310 Conn. 962, 83 A.3d 344 (2013).

The defendant's claim here is not of constitutional magnitude. Specifically, claims of instructional error involving constancy of accusation are not constitutional in nature and therefore do not satisfy *State* v. *Golding*, supra, 213 Conn. 239–40. "We have previously held that the failure of the trial court to give a limiting instruction concerning the use of evidence . . . is not a matter of constitutional magnitude. . . . Absent a claim of constitutional magnitude, the defendant's unpreserved claim fails to satisfy the second prong of *Golding* and is, therefore, not reviewable." (Internal quotation marks omitted.) *State* v. *Wild*, 43 Conn. App. 458, 467, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996); see also *State* v. *Farmer*, 108 Conn. App. 82, 88, 946 A.2d 1262, cert. denied, 288 Conn. 914, 954 A.2d 185 (2008). Accordingly, we conclude that the defendant's claim of instructional error fails under the second prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[2] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." We have noted that "[t]he plain error doctrine is a rule of reversibility reserved for truly extraordinary situations where the existence of the error is so obvious that

it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Bialowas*, 160 Conn. App. 417, 423–24, 125 A.3d 642 (2015); see also *State* v. *Opio-Oguta*, 153 Conn. App. 107, 118, 100 A.3d 461, cert. denied, 314 Conn. 945, 102 A.3d 1115 (2014).

[3] In his appellate brief, the defendant specifically references three objections made on each of the following days: January 14, 2014, January 16, 2014, January 17, 2014, January 23, 2014, and January 24, 2014.

[4] The defendant argued in his appellate brief that "the right to be present is personal and the defense attorney cannot waive that right for the defendant." The only authority for this statement is a passing reference to a dissenting opinion from the Colorado Supreme Court with no pinpoint citation. We decline to consider this contention because the defendant has not briefed it adequately. See *State* v. *Day*, 165 Conn. App. 137, 140–41 n.4, A.3d     (2016).

[5] The defendant's claim of plain error also fails as result of his waiver. "Plain error review is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Because we have concluded that the defendant waived [his] claim . . . there is no error to correct. . . . [A] valid waiver . . . thwarts plain error review of a claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Cancel*, supra, 149 Conn. App. 102–103; see also *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70, 967 A.2d 41 (2009); *State* v. *Rosado*, supra, 147 Conn. App. 702.

[6] "[T]he constancy of accusation doctrine traces its roots to the common-law concept of hue and cry whereby victims of violent crime were expected to cry out immediately and alert their neighbors that they had been violently assaulted. . . . In the context of sexual assault, evidence of a victim's hue and cry was a necessary prerequisite for a court to hear a rape case such that a woman who had not so complained could not have her case prosecuted. . . . Until 1974 in Connecticut, the state was required to offer evidence corroborating a victim's claims to obtain a conviction for sexual assault. . . . The General Assembly repealed this requirement of corroboration in Public Acts 1974, No. 74-131. Despite the repeal of the corroboration requirement, in cases such as the present one, the state often seeks to offer evidence corroborating the victim's complaint of sexual abuse. . . .

"In *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996), our Supreme Court determined that the constancy of accusation doctrine should be modified to better accommodate the interest of the victim in being protected against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident . . . and the interest of the accused in being protected against an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony. . . . [The court] thus decided in *Troupe* to reject the then existing rule that a person to whom a sexual assault victim has complained may provide substantive testimony regarding the incident. . . . [It] concluded [that a] person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Gene C.*, 140 Conn. App. 241, 248–49, 57 A.3d 885, cert. denied, 308 Conn. 928, 64 A.3d 120 (2013).

[7] "It is well settled that, pursuant to Practice Book § 42-16, to preserve for appeal a claim that the court improperly failed to give a jury instruction on a matter, the defendant *must* [submit] a written request to charge, or take exception to the jury instructions when they are given by the trial court." (Emphasis in original; internal quotation marks omitted.) *State* v.

*Young*, 161 Conn. App. 552, 560, 129 A.3d 127 (2015); see also *State* v. *Bullock*, 155 Conn. App. 1, 19, 107 A.3d 503, cert. denied, 316 Conn. 906, 111 A.3d 882 (2015).

[8] The court stated: "With regard to the [request to charge] from defense counsel, I think the subject is adequately covered in the constancy of accusation charge. I also question whether the exact language defense counsel used, although coming from a case, represents the state of the law. And obviously, it was somewhat skewed toward the defendant, which is to be expected, but I've elected not to give that postcharge because I think the charge that's in here, which is essentially from the jury instructions, the committee approved jury instruction is adequate."

[9] Specifically, the court instructed: "Constancy of accusation: The [victim] . . . testified here in court before you. You may use her testimony as evidence and proof of the facts asserted in that testimony and give it the weight you find is reasonable. The state offered evidence of an out-of-court statement made by [the victim] to Ms. Pinard that the defendant sexually assaulted her, specifically that she performed fellatio on the defendant. Under our law the testimony of Ms. Pinard as to that out-of-court statement was limited in its scope to the fact and timing of [the victim's] complaint, the place and nature of the alleged sexual assault, and the identity of the alleged perpetrator.

"This evidence is to be considered by you only in determining the weight and credibility you will give the [victim's] testimony as it pertains to the charge of sexual assault in count four. This evidence of an out-of-court statement by the [victim] of a sexual assault against her by the defendant is not to be considered by you to prove the truth of the matter asserted in those out-of-court statements.

"In determining whether or not this out-of-court statement corroborates the [victim's] testimony in court, you should consider all of the circumstances under which it was made and to whom and whether the statement to Ms. Pinard was or was not consistent with the [victim's] testimony in court.

"If you find any delay in her reporting the alleged incident, you may consider such delay and any reasons which you may find for such delay in evaluating her testimony in court. To the extent you find that what she has said outside the courtroom is consistent with her testimony in court, you may find her testimony in court to be corroborated or supported with respect to the fact and timing of her complaint, the time and place of that alleged sexual assault and the identity of the alleged perpetrator.

"To the extent you find that what she has said outside the courtroom is inconsistent with her testimony in court, you may consider the degree of inconsistency that you find and you may consider the reasons which you may find for the inconsistency in evaluating her testimony given in court."