******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

CHRISTOPHER TIERINNI *v.* COMMISSIONER
OF CORRECTION
(AC 46591)

Alvord, Cradle and Vertefeuille, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes in connection
with his relationship with a fifteen year old child, appealed following the
denial of his petition for certification to appeal from the judgment of the
habeas court denying his petition for a writ of habeas corpus. He claimed
that the court abused its discretion in denying his petition for certification
to appeal and improperly sustained three evidentiary objections made during
the habeas trial by the respondent, the Commissioner of Correction. *Held*:

The habeas court did not abuse its discretion in denying the petitioner's
petition for certification to appeal, as the resolution of the petitioner's
evidentiary claims did not involve issues that were debatable among jurists
of reason, were adequate to deserve encouragement to proceed further or
could be resolved by a court in a different manner.

This court declined to review, as unpreserved, the petition's claim that the
habeas court improperly sustained two hearsay objections made by the
respondent.

This court, assuming without deciding that the habeas court improperly
sustained the respondent's relevance objection to certain testimony by the
petitioner regarding a plea offer, concluded that the petitioner failed to
prove that he was harmed by the alleged evidentiary error.

Argued September 16, 2024—officially released January 21, 2025

*Procedural History*

Petition for a writ of habeas corpus, brought to the
Superior Court in the judicial district of Tolland and
tried to the court, *M. Murphy, J.*; judgment denying the
petition; thereafter, the court denied the petition for
certification to appeal, and the petitioner appealed to
this court. *Appeal dismissed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (petitioner).

*Brett R. Aiello*, assistant state's attorney, with whom,
on the brief, were *Matthew Gedansky*, state's attorney,

and *Angela Macchiarulo*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Christopher Tierinni, appeals following the denial of his petition for certification to appeal from the habeas court's judgment denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal and improperly sustained three evidentiary objections made by the respondent, the Commissioner of Correction. We dismiss the appeal.

On the basis of the evidence presented at the petitioner's criminal trial, the jury reasonably could have found the following facts, as set forth by this court in the petitioner's direct appeal. "The victim met the [petitioner] in the spring of 2011. At that time, the [petitioner] was twenty-eight years old and the victim was fifteen years old. Near the end of May, 2011, the [petitioner] kissed the victim. The [petitioner] told the victim that he loved her and eventually they engaged in sexual activity at his apartment on several occasions. The victim started missing school and stayed at the [petitioner's] apartment for extended periods.

"On June 17, 2011, the victim called the [petitioner] and asked him to pick her up at a fast food restaurant near her home. The [petitioner] arrived at the restaurant in his green minivan, which the victim entered. Police officers, who had been investigating the nature of the relationship between the [petitioner] and the victim, effectuated a traffic stop and found the victim crouched in the back seat. Although the victim initially denied having a physical relationship with the [petitioner], she eventually disclosed the sexual activity to law enforcement personnel." (Footnote omitted.) *State* v. *Tierinni,*

165 Conn. App. 839, 841–42, 140 A.3d 377 (2016), aff'd, 329 Conn. 289, 185 A.3d 591 (2018).

The following additional facts were found by the habeas court. On the basis of the aforementioned facts, "[o]n November 2, 2011, [the petitioner] was arrested and charged in *State* v. *Tierinni*, Superior Court, judicial district of Hartford, Docket No. CR-11-0236933-S (Manchester case). On January 10, 2012, [the petitioner] was arrested and charged in *State* v. *Tierinni*, Superior Court, judicial district of Tolland, Docket No. CR-12-0100519-S (Rockville case). Attorney [Kirstin B.] Coffin represented [the petitioner] in both the Manchester and Rockville cases. . . .

"On or about April 17, 2012, the state offered to resolve the cases in both jurisdictions via a global resolution. The state offered two consecutive sentences of eight years, execution suspended after three years, followed by ten years of probation, for a total effective sentence of sixteen years, execution suspended after six years, followed by ten years of probation. [The petitioner] did not accept the offer that would have resolved both the Manchester and Rockville cases.

"On August 27, 2013, [the petitioner] pleaded guilty [under the *Alford* doctrine[1]] in the Manchester case to one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). [The petitioner] was sentenced the same day in accordance with the plea agreement to a total effective sentence of five years, execution suspended after nine months, followed by five years of probation.

"Several days later, on August 30, 2013, the court, *Solomon*, *J.*, extended a court-indicated offer to [the petitioner] in the Rockville case. In exchange for plead-

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

ing guilty to one count of risk of injury to a [child] in violation of . . . § 53-21 (a) (2),[2] [the petitioner] could receive either a sentence of eight years, execution suspended after three years, followed by ten years of probation, or a sentence of ten years, execution suspended after two years and six months, followed by ten years of probation. [The petitioner] rejected both options and proceeded to trial." (Footnotes added.)

"In an amended substitute information, the state charged the [petitioner] with five counts of sexual assault in the second degree in violation of [General Statutes] § 53a-71 (a) (1) and four counts of risk of injury to a child in violation of § 53-21 (a) (2). Following a trial, the jury returned a not guilty verdict with respect to counts one and two of the information alleging, respectively, sexual assault in the second degree and risk of injury to a [child] for the time period of May 20, 2011, through May 31, 2011. The jury returned guilty verdicts for the remaining charges for conduct that occurred on June 6, 2011, June 7, 2011, and June 15, 2011. The court accepted the verdict, rendered judgment thereon, and sentenced the [petitioner] to an effective term of eighteen years of incarceration and forty-two years of special parole."[3] *State* v. *Tierinni*, supra, 165 Conn. App. 842.

---

[2] The habeas court's memorandum of decision states that the sentence offered was in exchange for pleading guilty to one count of risk of injury to a child. However, the petition alleges, and the respondent admitted in the return, that the offered sentence was in exchange for pleading guilty to one count each of risk of injury to a child and sexual assault in the second degree.

[3] This court affirmed the judgment of conviction on appeal, rejecting the petitioner's claims that "(1) he was denied his federal and state constitutional rights to due process and a fair trial when he was excluded from critical stages of the proceedings and (2) the court improperly instructed the jury." *State* v. *Tierinni*, supra, 165 Conn. App. 841. Following the granting of certification, our Supreme Court considered "whether [this court] properly concluded that the [petitioner] had waived any claim regarding his presence at sidebar conferences," and concluded that he had waived any such claim. *State* v. *Tierinni*, 329 Conn. 289, 292–93, 185 A.3d 591 (2018). Accordingly, our Supreme Court affirmed the judgment of this court.

The petitioner filed a petition for a writ of habeas corpus on May 7, 2014, and filed the operative amended petition on August 30, 2021.[4] The petitioner claimed in a single count that Coffin rendered ineffective assistance of counsel during plea negotiations. Specifically, he alleged that Coffin "failed to adequately conduct legal research . . . failed to adequately investigate the facts and circumstances . . . failed to adequately advise the petitioner regarding pursuing a plea agreement with the prosecuting authority; and . . . failed to adequately pursue a plea bargain for the petitioner." The respondent filed a return on September 30, 2021, asserting a lack of sufficient information to admit or deny the petitioner's allegations with respect to the legal research and investigation and denying the allegations regarding the failure to adequately advise and pursue a plea bargain for the petitioner.

The habeas court, *M. Murphy, J.*, held a trial on the petition on July 6, 2022, and January 12, 2023, at which the petitioner testified and presented the testimony of Coffin and Attorney Brian Carlow, an expert witness. The respondent did not present any witnesses. The petitioner submitted eight exhibits, and the respondent submitted one exhibit, all of which were admitted into evidence. The parties presented oral argument in lieu of posttrial briefs.

On April 18, 2023, the court issued a memorandum of decision in which it rejected the petitioner's ineffective assistance of counsel claim. The court made the following findings from the evidence presented at the habeas trial. "Attorney Coffin testified that she initially represented [the petitioner] only in the Manchester case, in which he was also charged with sexual assault and risk of injury to a [child] involving the same complainant.

---

[4] The petitioner had filed another petition, which was consolidated into the present matter.

[The petitioner] was represented by a public defender in the Rockville case. However, a few months later Attorney Coffin replaced the public defender and represented [the petitioner] in both jurisdictions. [The petitioner] faced a greater number and more serious charges in Rockville. Close to trial, the state amended the information and added more counts, which prompted [the petitioner] to have Attorney Coffin talk to the prosecutor and continue plea negotiations. The state, however, was no longer considering plea offers. Attorney Coffin was well aware that the state, should sufficient facts exist for the prosecution of additional counts, could add charges by amending the information. Attorney Coffin advised [the petitioner] that the state could amend the information and add charges.

"Attorney Coffin reviewed witness statements [and] police reports and spoke with [the petitioner]. The defense theory she developed in this case was that the incidents never occurred and that the complainant made them up to protect family members whom she had also accused of similar conduct. Attorney Coffin informed [the petitioner] of his sentence exposure as to all the charges, as well as what the state would need to prove for each offense. For example, Attorney Coffin advised [the petitioner] that the state did not have to prove force as an element of sexual assault in the second degree, just that the alleged incident occurred. Attorney Coffin advised [the petitioner] of his potential sentence exposures in correspondence communicating plea offers.

"In a letter dated April 18, 2013, Attorney Coffin reviewed the Rockville and Manchester offers for [the petitioner]. The original offer in the Rockville case was eight years to serve, execution suspended after three years, followed by ten years of probation. The offer in Manchester was eight years to serve, execution suspended after three years, consecutive to the Rockville

sentence. The total effective sentence [the petitioner] would receive for both the Rockville and Manchester cases would be sixteen years to serve, execution suspended after six years, followed by probation. In August of 2012, [the state] increased its offer [in the Manchester case] to ten years to serve.

"The April 18 letter also informed [the petitioner] that [in] a pretrial on April 11, 2013, Judge Solomon had indicated if he could get [the state] to agree to it, [the petitioner] would receive an offer of fifteen years to serve, execution suspended after five years, followed by ten years of probation to resolve both the cases in Rockville and Manchester. Judge Solomon was also willing to terminate . . . [the petitioner's] probation in a prior Hartford case. Although the letter noted that weaknesses in the complainant's story that could be challenged at trial, Attorney Coffin advised [the petitioner] that a trial was very risky because of his prior conviction for sexual assault and statements to the police might come into evidence despite counsel's efforts to suppress such evidence. [The petitioner] had until May 16 to accept or reject the court indicated offer. Attorney Coffin concluded the letter by informing [the petitioner] that she had received some new materials in the case and was sending them separately to him.

"In a second letter to [the petitioner] dated August 28, 2013, Attorney Coffin discussed his decision to resolve the Manchester case with an *Alford* plea by accepting the state's offer of five years to serve, execution suspended after nine months, followed by five years of probation. Attorney Coffin again described going to trial as risky given the anticipated evidence and arguments by the state. Attorney Coffin informed [the petitioner] that she had called the caseflow coordinator in Rockville to schedule a pretrial there on August 30 with Judge Solomon. Although she did not know

what plea offer [the petitioner] could expect in Rockville, Attorney Coffin would make the same arguments she made in Manchester and strive to obtain the lowest sentence possible. Attorney Coffin told [the petitioner] he should expect the state to introduce the recent Manchester conviction into evidence if the Rockville case proceeded to trial. The *Alford* plea to the charge of risk of injury to a [child], which was less damaging than a conviction for sexual assault in the second degree, did not involve [the petitioner] admitting to any sexual misconduct.

"According to Attorney Coffin, the Rockville pretrial she arranged after [the petitioner's] guilty plea in Manchester resulted in a court-indicated sentence of ten years to serve, execution suspended after two and one-half years, to run consecutive to the Manchester sentence. Attorney Coffin strongly recommended that [the petitioner] accept that final and best offer in Rockville. However, [the petitioner] was not interested in consecutive time, did not accept the offer, and proceeded to trial. Attorney Coffin knew a court could impose restrictions or additional consequences (e.g., probation, sex offender registration, and special parole) after a jury trial, but could not specifically recall if she told [the petitioner] about special parole.

"[The petitioner] testified at the habeas trial that Attorney Coffin communicated regularly with him in writing and visited him in prison. Attorney Coffin reviewed police reports with [the petitioner] and sent him copies of the reports. According to [the petitioner], Attorney Coffin did not explain to him what the state needed to prove to convict [him] of the charged offenses. [The petitioner] testified that he neither understood that the state had enough evidence to convict him nor that the state had a very strong case against him. Finally, [the petitioner] testified Attorney Coffin did not explain his sentence exposure correctly and

[he] did not understand that the court had sentencing options such as special parole.

"[The petitioner] recalled that there were several plea offers. The first plea offer was for eight years to serve, execution suspended after three years, followed by ten years of probation. The second plea offer was for fifteen years to serve, execution suspended after five years, followed by ten years of probation, to resolve both the Manchester and Rockville cases. The third plea offer was for ten years to serve, execution suspended after two and one-half years, followed by ten years of probation. [The petitioner] later became aware of a fourth plea offer. According to [the petitioner], he was not aware that the state could amend the information and add charges, thereby increasing his total sentence exposure to 180 years for all nine counts, if he rejected the plea offers. [The petitioner] would have tried to resuscitate Judge Solomon's offer had he known the state could amend the information and add charges prior to trial. Furthermore, [the petitioner] would have accepted that offer had he known about the potential of additional charges.

"Attorney Carlow, [the petitioner's] expert witness regarding the standards for representation, provided testimony about defense counsel's considerations when advising a client on a plea offer. Counsel should review materials such as police reports, witness statements, and other items provided through discovery. Additionally, counsel must investigate the case and communicate with the client to determine if additional information needs to be developed. Critical components are accurately advising a client about the sentence exposures and the strength of the state's case. All this information is used to effectively advise a client about plea offers and, if those fail, proceeding to trial with the best possible defense strategy. According to Attorney Carlow, reasonably competent defense counsel should

advise a client about the likely consequences or results if a plea agreement is rejected, including that the state may file a substitute information adding more charges." (Footnotes omitted.)

The habeas court determined that the petitioner had failed to substantiate his ineffective assistance of counsel claim with credible evidence. The court found that Attorney Coffin "obtained multiple offers in both Manchester and Rockville, including an early offer that would have resolved all charges in both jurisdictions with an advantageous global resolution. [The petitioner] did not accept that offer. Subsequently, Attorney Coffin was able to negotiate a good plea agreement in the Manchester case. [The petitioner] thereafter had several opportunities to resolve the Rockville case, including with an offer that Attorney Coffin strongly suggested he accept, but he was unwilling to accept it because it involved a sentence that would run consecutive to the Manchester sentence." The court found the petitioner not credible with respect to his testimony that Attorney Coffin failed to explain or inform him of certain aspects of his case. The court found the petitioner "familiar with the criminal and plea agreement processes from several prior convictions," noting that the Manchester case was resolved by way of a highly favorable plea agreement and that the Rockville best and final offer presented the petitioner with two highly favorable options. The court found that the petitioner's "failure to accept one of the alternative offers did not result from deficient performance by Attorney Coffin."

The court found Attorney Coffin's performance "more than reasonably competent and well within the bounds of effective representation." Crediting Attorney Coffin's testimony, the court found that she negotiated multiple plea offers, communicated them to the petitioner, and strongly recommended to the petitioner that he accept the offered sentence. The court found that

the petitioner "rejected both options and proceeded to trial despite Attorney Coffin's strong recommendation that he accept a plea offer." Accordingly, the court denied the petition for a writ of habeas corpus and thereafter denied the petitioner's petition for certification to appeal. This appeal followed. Additional procedural history will be set forth as necessary.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review . . . only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If this burden is not satisfied, then the claim that the judgment of the habeas court should be reversed does not qualify for consideration by this court. . . .

"The standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To

satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Citation omitted; internal quotation marks omitted.) *Roman* v. *Commissioner of Correction*, 229 Conn. App. 219, 224–25, 325 A.3d 1208 (2024).

The petitioner's sole claim on appeal is that the habeas court improperly sustained three evidentiary objections made by the respondent. "The applicable standard of review for evidentiary challenges is well established. Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 602–603, 940 A.2d 789 (2008).

The following additional procedural history is relevant to the petitioner's claim. During the petitioner's testimony on direct examination at the habeas trial, the following colloquy occurred:

"[The Petitioner's Counsel]: [D]id [Attorney Coffin] discuss . . . a statement from the [victim]?

"[The Petitioner]: Yes. Two different statements.

"[The Petitioner's Counsel]: Okay. And . . . do you recall generally what she told you about those statements? . . .

"[The Respondent's Counsel]: Objection. Hearsay.

"The Court: All right. So, so yeah, I'm gonna sustain the objection as to you can't tell me what Attorney Coffin said to him.

"[The Petitioner's Counsel]: Right. Okay.

"The Court: That's hearsay.

"[The Petitioner's Counsel]: Okay. Okay."

The respondent raised a second hearsay objection during the following colloquy:

"[The Petitioner's Counsel]: And so, did [Attorney Coffin] explain what the state needed to prove in order to, in order to convict you of [sexual assault in the second degree]?

"[The Petitioner]: All she told me is that—

"[The Respondent's Counsel]: Objection. (Indiscernible.)

"The Court: I'm sorry. I didn't hear the objection.

"[The Respondent's Counsel]: Hearsay.

"The Court: Okay. I'm gonna sustain the objection.

"[The Petitioner's Counsel]: Okay."

Third, the petitioner was asked by his habeas counsel whether he had filed a complaint against Attorney Coffin with the Statewide Grievance Committee. When asked what the result of the grievance was, the petitioner testified that he could not remember without looking at it. The petitioner's counsel asked whether reviewing a copy of the grievance would refresh his recollection, and the petitioner responded that it would.

The respondent's counsel objected on the basis of relevance, stating, "Whether or not he filed a grievance against her has nothing to do with whether or not she adequately advised him regarding pursuing a plea bargain offer and adequately pursued a plea bargain offer." The petitioner's counsel responded that the petitioner "testified that, in the response to the grievance, there was some, there was some mention of a plea offer that was not given to him. Thus, the grievance proceeding is relevant on, on those grounds." The court heard from the petitioner's counsel again, and counsel explained, "I'm trying to lay the foundation to how he found out about this fourth plea offer that Attorney Coffin did not convey. I'm trying to lay the foundation for that." The court stated: "I'm gonna sustain the objection as to relevance. I mean, if he can testify from it, you know, from, you know, but as to bringing in the grievance I just don't find that relevant." Accordingly, the court sustained the respondent's objection.

We first consider the petitioner's claim that the court improperly sustained the respondent's two hearsay objections "[b]ecause the petitioner was not seeking to admit the statements of trial counsel for their truth . . . ." The respondent argues that the petitioner's claim is unpreserved. Specifically, he argues that the petitioner "made no offer of proof as to why the challenged testimony was not hearsay, nor did he explain how a particular exception applied under the rules of evidence." We agree with the respondent that the petitioner's claim is unpreserved.

"The theory of admissibility is germane to our consideration of whether the court properly exercised its discretion to exclude the proffered testimony on the basis of a correct view of the law. An appellant who challenges on appeal a trial court's exclusion of evidence is limited to the theory of admissibility that was raised before and ruled upon by the trial court. A court cannot

be said to have refused improperly to admit evidence during a trial if the specific grounds for admission on which the proponent relies never were presented to the court when the evidence was offered. . . . Error does not lie in the exclusion of evidence claimed on an inadmissible ground even though it might have been admissible had it been claimed on another and different ground [at trial]." (Internal quotation marks omitted.) *Glen S.* v. *Commissioner of Correction*, 223 Conn. App. 152, 154 n.1, 307 A.3d 951, cert. denied, 348 Conn. 951, 308 A.3d 1038 (2024).

In the present case, the court sustained the respondent's objections on the basis of hearsay.[5] The petitioner's counsel responded, "Okay," and did not offer a nonhearsay purpose or identify an exception to the rule against hearsay. On appeal, the petitioner claims that the testimony was not hearsay because it was not introduced to establish the truth of the matter asserted but rather that it "was designed to establish the effect of trial counsel's advice on the petitioner." This reasoning was not advanced to the habeas court and, thus, was not preserved for review. See *Bennett* v. *Commissioner of Correction*, 182 Conn. App. 541, 554, 190 A.3d 877 (declining to review as unpreserved argument that transcript should have been admitted into evidence as full exhibit pursuant to residual exception to hearsay rule because such argument was not made to habeas court), cert. denied, 330 Conn. 910, 193 A.3d 50 (2018); see also *Glen S.* v. *Commissioner of Correction*, supra, 223 Conn. App. 154 n.1 (declining to review as unpreserved

---

[5] "An out-of-court statement offered to establish the truth of the matter asserted is hearsay. . . . As a general rule, such hearsay statements are inadmissible unless they fall within a recognized exception to the hearsay rule. . . . The hearsay rule forbids evidence of out-of-court assertions to prove the facts asserted in them. If the statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay." (Citation omitted; internal quotation marks omitted.) *Houghtaling* v. *Commissioner of Correction*, 203 Conn. App. 246, 284, 248 A.3d 4 (2021).

additional admissibility arguments that were not raised before habeas court). Accordingly, we decline to review as unpreserved the petitioner's claim that the court improperly sustained the two hearsay objections made by the respondent.

We next consider the petitioner's claim that the court improperly sustained the respondent's relevance objection.[6] The petitioner argues that "[t]he testimony that was excluded by the habeas court establishes the petitioner's belief that there was a fourth plea offer and, thus, is relevant to the issue of whether the petitioner was properly advised by trial counsel during plea negotiations, which is one of his claims of error in his habeas petition. Further, the excluded testimony was necessary for the petitioner to establish whether he would have accepted the plea offer instead of pursuing a trial." The respondent maintains that the court acted within its discretion in excluding the testimony on relevance grounds and further argues that the petitioner has failed to prove that he was harmed by the alleged evidentiary error. We assume without deciding that the court improperly excluded the challenged evidence, and we conclude that the petitioner failed to sustain his burden of showing that any such impropriety was harmful.

"Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Under the current and long-standing state of

---

[6] "Evidence that is not relevant is inadmissible. . . . Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 576, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016).

the law in Connecticut, the burden to prove the harmfulness of [a nonconstitutional] improper evidentiary ruling is borne by the [petitioner]. The [petitioner] must show that it is more probable than not that the erroneous action of the court affected the result." (Citation omitted; internal quotation marks omitted.) *Houghtaling* v. *Commissioner of Correction*, 203 Conn. App. 246, 285–86, 248 A.3d 4 (2021).

Central to our evaluation of the potential harm of the claimed evidentiary error is a careful consideration of the rationale underlying the court's determination that the petitioner had failed to prove his claim of ineffective assistance of counsel. The court stated in its memorandum of decision that "[the petitioner] recalled that there were several plea offers." After restating the terms of those offers, the court noted that "[the petitioner] later became aware of a fourth plea offer." As the petitioner recognizes, the court's decision substantially was based on its credibility findings as to the petitioner and Coffin. Specifically, the court found the petitioner not credible as to his contentions that Coffin did not "explain to him what the state needed to prove to convict him of the charged offenses, inform him that the state had a strong case and enough evidence to convict him, explain his sentence exposure correctly, and amend the information to add charges." The court credited Coffin's testimony that she "negotiated multiple plea offers and communicated them to [the petitioner], as well as that she strongly recommended to [the petitioner] that he accept the offered sentence . . . ." The court found that the petitioner proceeded to trial "despite Attorney Coffin's strong recommendation that he accept a plea offer." These credibility findings are unassailable on appeal; see *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 694, 159 A.3d 1112 (2017); and we are not persuaded that the additional evidence that the petitioner sought to introduce would have affected the

court's conclusion that the petitioner had failed to prove that Coffin rendered ineffective assistance of counsel. Thus, we conclude that the petitioner has failed to meet his burden to prove that the exclusion of his testimony as to the fourth plea offer harmed him "in a way that makes it more probable than not that the decision of the habeas court would have been different." (Internal quotation marks omitted.) *Houghtaling* v. *Commissioner of Correction*, supra, 203 Conn. App. 288.

On the basis of our review of the record and the relevant legal principles, we cannot conclude that the resolution of the petitioner's claim involves issues that are debatable among jurists of reason, are adequate to deserve encouragement to proceed further or that a court could resolve in a different manner. Accordingly, the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.